Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 3939 | DATE | Oct. 28, 2002 |
| CASE TITLE | Robert Brown, et al    v    Sears, Roebuck & Co., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ■ Status hearing reset to 11/21/02, at 9:30 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed pursuant to
    ☐ FRCP4(m)  ☐ Local Rule 41  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered.
Accordingly, defendant's motion to dismiss counts I through IV is granted. Plaintiffs are given leave to file and amended complaint by 11/18/02. Status report due date of 10/30/02 is stricken.

(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | OCT 9 2002 | |
| | Notified counsel by telephone. | | date docketed | SS |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| GDS | courtroom deputy's initials | 02 OCT 29 AM 11:45 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT BROWN, JANET DIAZ, and JOHN )
WELLING, individually and on behalf of all others )
similarly situated, )
)
Plaintiffs, )
) No.   02 C 3939
v. )
) Judge Robert W. Gettleman
SEARS ROEBUCK & COMPANY, DIAMOND )
EXTERIORS, INC., DIAMOND HOME )
SERVICES, INC., and PROFESSIONAL )
BENEFIT ADMINISTRATORS, INC., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Robert Brown, Janet Diaz and John Welling filed a six-count amended putative class action complaint against Diamond Exteriors, Inc. ("Diamond"), Diamond Home Services, Inc. ("DHS"), Professional Benefit Administrators, Inc. ("PBA"), and Sears Roebuck and Company ("Sears"). Plaintiffs allege unjust enrichment (Count I), conversion (Count II), a violation of the Illinois Wage Payment and Collection Act (Count III), two breaches of contract (Counts IV and V), and request punitive damages (Count VI). In five of the six counts Sears is a named defendant. Sears has moved to dismiss the complaint, arguing that plaintiffs failed to adequately allege that Sears was a de facto employer, and therefore liable. In addition, Sears argues that the complaint fails to adequately allege both the conversion and the unjust enrichment claims. For the reasons set forth below, the motion is granted.



## Allegations of Complaint[1]

On January 1, 1996, Diamond and Sears entered into a licensing agreement under which Diamond sold and installed Sears home improvement items. The parties agreed that Diamond had "sole and exclusive control" over its employees. The agreement says that Diamond "shall operate [as] an independent contractor." The parties also agreed, however, that Diamond would "give consideration to the transfer" of any employee Sears deemed objectionable. The parties agreed that Diamond would carry Worker's Compensation and Employer's Liability Insurance "in amounts satisfactory to Sears and adequate to fully protect Sears" against any claims. Further, all customer information was exclusively owned by Sears. Further agreements in 1999 modified the 1996 agreement. In a letter agreement on June 30, 1999, Diamond agreed not to enter into a licensing agreement with a Sears competitor. The following day, Diamond and Sears amended their licensing agreement to ensure that Diamond's installation met Sears' quality control standards. The agreement was modified three other times in November of 1999, all aimed at ensuring that Diamond was meeting Sears' business standards.

Under the licensing agreement, Sears customers requested home improvement consultation from Sears, and Diamond personnel did the consulting, selling and installation. The customers paid Sears directly, often through a Sears credit card. Once the work was completed Sears would pay Diamond. This was done via electronic transfers through accounts designated by Sears. Sears' portion of the proceeds was generally 11 to 14 percent of the gross revenues and materials. Once

---

[1]In considering Sears' motion to dismiss, the licensing agreement is considered part of the pleadings. *Help at Home, Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 752 (7th Cir. 2001). In addition, the later agreements that modified the licensing agreement are considered under the doctrine of completeness. *In Re First Chicago Corp. Sec. Litig.*, 769 F. Supp. 1444, 1450 (N.D. Ill. 1991).

Diamond was paid, Diamond's employees were paid, including a base wage, a commission and expense reimbursement.

Plaintiffs received their final paychecks around January 31, 2000, around the same time Diamond ceased doing business. When plaintiffs received their paychecks Diamond's bank account had the funds necessary to cover the checks. When plaintiffs attempted to cash their checks, Diamond's bank account had insufficient funds. Sears removed the remaining funds from Diamond's account before Diamond was dissolved. Additionally, Sears did not make a scheduled payment to Diamond in the days before Diamond's demise.

## Discussion

On a motion to dismiss for failure to state a claim, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of plaintiffs. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996). The court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would plaintiffs' allegations entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The purpose of a motion to dismiss is to test the sufficiency of complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Sears argues that: (1) plaintiffs fail to adequately allege an agency relationship that makes Sears liable for Diamond's actions; (2) plaintiffs fail to allege a cause of action for unjust enrichment; and (3) plaintiffs fail to allege a cause of action for conversion. Each count will be addressed separately.

**Count I—Unjust Enrichment**

In Count I, plaintiffs allege that Sears was unjustly enriched when Sears reaped the benefits of plaintiffs' labor. Sears argues that Count I fails to state a claim because: (1) plaintiffs fail to adequately allege that Sears was plaintiffs' de facto employer; and (2) as a matter of Illinois law, a third party cannot be held liable for an implied contract when there was an explicit contract between two different parties.

In Illinois, unjust enrichment is based on an implied contract in law. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.*, Inc., 131 Ill.2d 145, 545 N.E.2d 672 (1989). Unjust enrichment exists when (1) "a defendant receives a benefit, (2) to the plaintiff's detriment, and (3) the defendant's retention of that benefit would be unjust." *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 829 (7th Cir. 1998) (citing *HPI*, 131 Ill.2d 145, 545 N.E.2d 672). To recover under unjust enrichment, plaintiffs must show that Sears voluntarily accepted a benefit that would be inequitable to retain without payment. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 497, 607 N.E.2d 165 (1992).

Sears correctly argues that plaintiffs must allege a cognizable agency liability theory to state a prima facie case of unjust enrichment based on Sears receiving the benefit of plaintiffs' labor. *See St. Ann's Home for Aged v. Daniels*, 95 Ill. App.3d 576, 420 N.E.2d 478 (1st Dist. 1981). Otherwise, Sears is simply a third party that cannot be held liable for reaping the benefits of the work performed by plaintiffs in accord with their contractual obligations to Diamond. *Decatur Production Credit Ass'n v. Murphy*, 119 Ill. App.3d 277, 288 456 N.E.2d 267, 274 (4th Dist. 1983). Sears argues that plaintiffs must allege sufficient facts to show that Sears had day-to-day control over plaintiffs to prove that Sears was plaintiffs' de facto employer. *See, Lavazzi v. McDonald's Corp.*, 239 Ill. App.3d

4

403, 606 N.E.2d 845 (2d Dist. 1992); *In Re Penn Central Transportation Co.*, 419 F.Supp.1370 (E.D. Pa. 1976). Plaintiffs argue that they must simply allege that Diamond was a servant of Sears and that plaintiffs were therefore subservants. *See, Kelley v. Southern Pacific Co.*, 419 U.S. 318, 324, 95 S.Ct. 472, 476, 42 L.Ed.2d 498 (1974). Plaintiffs are correct that an allegation based on subservancy would state a cognizable claim. *Kelly*, 419 U.S. at 324. However, plaintiffs have failed to adequately allege a subservant relationship.

There are three ways to allege a master-servant relationship sufficient to withstand Sears' motion to dismiss: (1) dual employment; (2) borrowed employee; and (3) subservancy. *Kelley*, 419 U.S. at 324. In *Kelley*, the Supreme Court analyzed whether the plaintiff was an employee for the purpose of bringing an action under the Federal Employers' Liability Act. *Id.*, at 323. The court, however, applied common law agency principals in holding that the case should be remanded to determine if the plaintiff was in fact an employee of the defendant. *Id. Kelley*'s application of common law master-servant principals has been adopted in Illinois. *See e.g. Bucieri v. Illinois Cent. Gulf R.R.*, 235 Ill. App.3d 191, 601 N.E.2d 840 (1st Dist. 1992) (following *Kelley* and reversing summary judgment because employment status was question of fact); *Hopgood v. Anheuser-Busch, Inc.*, 120 Ill. App.3d 222, 458 N.E.2d 525 (5th Dist. 1983) (finding facts did not support subservant theory of liability on summary judgment).

Plaintiffs have not adequately alleged either dual-employment or borrowed employment. Plaintiffs do allege, however, that they were subservants of Sears. This allegation by itself would likely be enough to withstand a motion to dismiss. *See St. Ann's*, 95 Ill. App.3d at 579 (holding a "prima facie case of agency can be created by inference or presumption" and that the actual scope of the agency must be decided by the trier of fact if there is any dispute); see also *Conley, supra*, 355

U.S. at 45-46 (requiring only notice pleading in federal courts). However, the licensing agreement is also apart of the pleading, *Help at Home*, 260 F.3d at 752, and, while not dispositive, must be considered in determining the sufficiency of the complaint. *Schroeder v. Pennsylvania Railroad*, 397 F.2d 452, 455 (7th Cir. 1968).

For plaintiffs to be subservants of Sears, Diamond must have been a servant of Sears. *Kelley*, 419 U.S. at 324. Illinois has adopted the 10 factors set forth in the Restatement (Second) of Agency § 220 for determining if a master-servant relationship exists. *Hills, supra*, 195 Ill.2d at 234. These factors are: (1) the extent of control over the servant; (2) whether the agent is engaged in a distinct business; (3) the locality's custom; (4) the skill required to perform the duty; (5) who supplies the instrumentalities and tools; (6) the length of time of the agency; (7) the method of payment; (8) whether the work is part of the principal's regular business; (9) the belief of the parties; and (10) whether the principal is in business. Restatement (Second) of Agency § 220.

There is little guidance as to what threshold a plaintiff must meet to avoid a motion to dismiss when pleading subservant liability. Illinois courts have not addressed the issue of subservant liability in the context of a motion to dismiss. See e.g. *Bucieri*, 235 Ill. App.3d at 193 (summary judgment); *Hopgood*, 120 Ill. App.3d at 230 (summary judgment); *Tierney v. Burlington Northern Railroad Company*, 240 Ill. App.3d 526, 527 608 N.E.2d 479, 480 (holding fact question as to employment precluded summary judgment); *Kottmeyer v. Consolidated Rail Corp.*, 98 IllApp.3d 365, 379, 424 N.E.2d 345, 356 (5th Dist. 1981) (upholding directed verdict in favor of the plaintiff-employee); *Consolidated Rail Corp. v. Liberty Mutual Ins., Co.*, 92 Ill. App.3d 1066, 416 N.E.2d 758 (5th Dist. 1981) (upholding judgment that insurance company must cover railroad's subservants). The cases cited by Sears all involved summary judgments, *Richardson v. Bulk Petroleum Corp.*, 11

6

Ill. App.3d 655, 297 N.E.2d 405 (1st Dist. 1973), *Lavazzi*, 239 Ill. App.3d 403, or directed verdicts, *Coty v. U.S. Slicing Machine Co.*, 58 Ill. App.3d 237, 373 N.E.2d 1371 (2d Dist. 1978). The courts of this district and Seventh Circuit rulings that have dealt with this issue also do not specifically address the standard for a motion to dismiss. *See e.g. Staschke v. Grand Truck Western Railroad Inc.*, 1998 WL 245867 (N.D. Ill. 1998) (denying defendants motion for summary judgment); *see also Schroeder, supra*, 397 F.2d 452 (reversing directed verdict).

In the instant case, all plaintiffs have alleged is that they were Sears' subservants. The complaint conspicuously fails to allege that Sears had day-to-day control over Diamond or Diamond's employees, or that Diamond operated out of Sears' space or used Sears' tools or equipment. The one clear factual allegation is the intent of the parties, as expressed by the licensing agreement, that Diamond was an independent contractor. Indeed, the licensing agreement specifically makes Diamond responsible for the working conditions, hiring, firing, promotion, assignments and compensation of its employees and the provisions of all tools and equipment used by those employees. Although under the license agreement Sears exercised a certain amount of control over Diamond, both in terms of the standard of quality for the services provided, and in the manner in which Diamond conducted its finances, this did not constitute day-to-day control sufficient to change Diamond's legal status from an independent contractor into a servant of Sears. *See e.g. Hopgood v. Annheuser-Busch, Inc.*, 120 Ill. App.3d 222.

Therefore, Sears motion to dismiss as to Count I is granted.

**Count II--Conversion**

In Count II, plaintiffs alleged that Sears converted their property when plaintiffs' final paychecks from Diamond were not honored because Sears removed funds from Diamond's account. Sears makes two separate arguments for dismissal of Count II. First, Sears argues that plaintiffs failed to adequately allege agency liability. Since this count is based on allegations of wrongdoing done by Sears itself, plaintiffs do not have to allege any agency liability.

Second, Sears makes two arguments as to why the conversion claim is legally insufficient: (1) plaintiffs had no right to the money because the money was not their property; and (2) plaintiffs did not have an absolute right to possess the property immediately. Because plaintiffs have failed to allege that the money was specifically earmarked for plaintiffs, Count II fails to state a claim under Illinois law.

To plead a claim for conversion under Illinois law, a plaintiff must allege that: (1) he has a right to property; (2) he has an absolute right to possess the property; (3) he has made a demand for possession; and (4) the defendant wrongfully assumed control or ownership over the property. *Cirrincione v. Johnson*, 184 Ill.2d 109, 114, 703 N.E.2d 67, 70 (1998).

The "subject of conversion is required to be an identifiable object of property." *In Re Thebus*, 108 Ill.2d 255, 260, 483 N.E.2d 1258 (1985). Money meets that requirement if it is shown that it was "specifically earmarked" for the plaintiff. *Id.* Examples of specifically earmarked money include funds put into a separate account for one specific purpose, *In Re Thebus*, 108 Ill.2d at 263; funds placed for a wire transfer, *Addante v. Pompilio*, 303 Ill. App. 172, 25 N.E.2d 123 (1940); and converting a negotiable instrument, *Grand Pacific Hotel Co. v. Rowland*, 88 Ill. App. 519 (1899).

8

Although plaintiffs argue in their brief that there were reasons to believe the money in Diamond's bank account was earmarked, this argument implies facts that are not alleged in the complaint. In fact, the complaint alleges only that Sears was paid money that Diamond owed to Sears under the license agreement from the funds in Diamond's bank account that would have been available to pay plaintiffs' wages absent such payments to Sears.

Therefore, absent any allegation that the money was specifically earmarked for plaintiffs, plaintiffs have failed to allege that they had either a right in the specific money in the bank, or an absolute right to immediately possess the money. Count II is dismissed.

**Count III—Violation of Illinois Wage Payment and Collection Act**

Count III of the complaint alleges a violation of the Illinois Wage Payment and Collection Act ("WPCA"). Sears argues that plaintiffs have failed to allege agency liability. The starting point when a plaintiff alleges a statutory violation is the statute's definition of employer. *See e.g. Jack Bradley, Inc. v. Department of Employment Security*, 146 Ill.2d 61, 73-74, 585 N.E.2d 123, 128, 165 Ill.Dec. 727, 732 (1992) (holding that the definition of employer in the Unemployment Compensation Act was broader than common law master-servant relationships).

The WPCA, 820 ILCS 115/2, defines an employer as,

> any individual, partnership, association, corporation, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed.

There are no Illinois cases that have analyzed this definition. The Act explicitly does not cover one who is: (1) an independent contractor in name and in fact; (2) performs all of their work

outside of the place of business of the employer; and (3) is an independently established trade, occupation, profession or business. 820 ILCS 115/2. With this exception, the Illinois legislature expressly excluded independent contractors.

Because the court has found that plaintiffs were not Sears' subservants, they were not Sears' employees for the purpose of this Act. Therefore, defendants' motion to dismiss Count III is granted.

**Count IV—Breach of Contract**

Count IV alleges breach of contract based on plaintiffs not being paid for their work performed. Sears' only argument is that plaintiffs have failed to allege agency liability. When alleging a contract action plaintiffs must show an agency relationship that does not necessarily rise to the level of master-servant. *See e.g. St. Ann's*, 95 Ill. App.3d 576. In Illinois, a principal is also bound for any "apparent authority" it gives its agent. *Petrovich*, 188 Il.2d at 32. If the principal creates the appearance of authority, then the principal is estopped from arguing that its agent did not have that authority. *Id.* The scope of Sears and Diamond's agency relationship may be implied from facts and circumstances. *St. Ann's*, 95 Ill. App. 3d at 579. A "prima facie case of agency can be created by inference or presumption." *Id.* The actual scope of the agency must be decided by the trier of fact unless it is undisputed that there was no agency liability. *Id.*

Plaintiffs do not allege that they believed that they were contracting with Sears as their employers when they contracted with Diamond. Absent any allegation that they thought they had contracted with Sears, or that Sears had held Diamond out to make employment contracts on their behalf, plaintiffs cannot allege a breach of contract action against Sears. Therefore, Count IV is dismissed.

## Conclusion

For the foregoing reasons, the Sears' motion to dismiss Counts I through IV is granted. Plaintiffs are granted leave to file an amended complaint, consistent with their obligations under Fed. R. Civ. P. 11, on or before November 18, 2002. This matter is set for report on status on November 21, 2002, at 9:00 a.m. The status report previously set for October 30, 2002, is vacated.

**ENTER: October 28, 2002**

_____
**Robert W. Gettleman
United States District Judge**