Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 3939 | DATE | September 24, 2003 |
| CASE TITLE | Robert Brown v Sears Roebuck & Co., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___.
(3) ☐ Answer brief to motion due ___. Reply to answer brief due ___.
(4) ☐ Hearing
(5) ☐ Status hearing set for 10/7/03, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendant' Sears' motion for summary judgment on Counts I through IV is **granted**.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | SEP 2 4 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | AK | 85 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT BROWN, JANET DIAZ, and JOHN )
WELLING, individually and on behalf of all others )
similarly situated, )
)
          Plaintiffs, )
) No.   02 C 3939
v. )
) Judge Robert W. Gettleman
SEARS ROEBUCK & COMPANY, DIAMOND )
EXTERIORS, INC., and DIAMOND HOME )
SERVICES, INC., )
)
          Defendants. )

DOCKETED
SEP 24 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs Robert Brown, Janet Diaz, and John Welling, individually and on behalf of all others similarly situated, have brought a five count second amended putative class action complaint against Diamond Exteriors, Inc. ("Diamond"), Diamond Home Service, Inc., and Sears Roebuck & Company. Plaintiffs allege unjust enrichment, conversion, violations of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 et. seq.), breach of contract, and a claim for funds interpled by former defendant, Professional Benefit Administrators, Inc., in Counts I through V respectively.[1] Sears is named in Counts I through IV and has moved for summary judgment on those counts. For the reasons set forth below, the motion is granted.

### FACTS

Plaintiffs are three former employees of defendant Diamond. On January 1, 1996, Diamond and Sears entered into a written licensing agreement ("Licensing Agreement") under which Diamond

---

[1] Count V, the claim for the interpled funds, is improperly labeled as a second Count IV.

sold and installed Sears home improvement items. The Licensing Agreement was very specific about the intended relationship between Sears and Diamond. In particular, paragraph 8 of that agreement provides:

> (Relationship) – licensee shall operate in the capacity of an independent contractor. Nothing contained or done pursuant to this Licensing Agreement shall be construed as creating a partnership, agency, . . . or joint venture and, except as may be otherwise expressly provided in this Licensing Agreement, neither party shall become bound by any representation, act, or omission of the other party hereto.

The agreement also carefully delineated the status of Diamond's employees with respect to Sears. For example, paragraph 6(A) provides that:

> Licensee shall have no authority to employ persons on behalf of Sears and no employee of licensee shall be deemed to be employees or agents of Sears, said employees at all times remaining licensee's employees. Licensee shall have the sole and exclusive control over its labor and employee relationship policies and policies relating to wages, hours, working conditions, or conditions of its employees. Licensee shall have the sole and exclusive right to hire, transfer, suspend, lay-off, recall, promote, assign, discipline, adjust grievances and discharge said employees, provided, however, that at any time Sears so requests, licensee will give consideration to the transfer, from the sale or installation of Sears approved products, of any employee who is objectionable to Sears for reasons of health, safety and/or security of Sears' customers, employees or Sears merchandise and/or whose manner impairs Sears' customer relations.

Additionally, and perhaps most importantly for the instant case, paragraph 6(C) of the licensing agreement provides that "licensee is solely responsible for all salaries and other compensation of all licensee's employees." Under this paragraph, Diamond was also required to make all necessary salary deductions and withholding from salaries and was solely responsible for social security, state unemployment compensation and all federal, state and local income tax withholding. Finally, Diamond was required to provide all facilities, vehicles, tools, and equipment needed to operate its business.

2

According to plaintiffs,[2] potential customers who saw an advertisement for Sears home improvement products would call a toll free telephone number that was received at a Sears' owned call center. If the caller was interested in installing roofing, fencing, gutters or doors, the automated menu would route the call to a Diamond-owned call center in Lawrence, Kansas. Operators there would answer in the name of "Sears Home Central" and followed scripts prepared jointly by Sears and Diamond. Diamond salespersons were called "Home Consultants" and met with potential customers at their homes, using sales presentation procedures and materials and contracts pre-approved by Sears. For purchasing customers, the Diamond Home Consultant would prepare a Sears credit application and call a Sears credit officer for approval, using a Sears form. All materials used in projects sold by Diamond had to be pre-approved by Sears.

Sears monitored the performance of Diamond's employees in several ways, including customer surveys, installation inspections, field audits and daily telephone conference and monthly quarterly reviews. It is undisputed that there were times when, based on the surveys or field audit, Sears advised Diamond that certain home consultants and other Diamond employees were not performing as required, and requested their termination. Some of those employees were in fact terminated, but others were not.

On October 29, 1999, Diamond and several of Diamond's lenders and banks entered into a forbearance agreement, under which Diamond's lenders agreed to defer immediate collection on Diamond's outstanding loans for as long as Diamond's Licensing Agreement with Sears was not

---

[2]The description of Diamond's day-to-day operations under the Licensing Agreement are taken from plaintiffs' L.R. 56.1(b)(3)(B) Statement of Additional Facts that Required Denial of Summary Judgment. Because Sears' has not responded to that statement, the facts contained therein are deemed admitted. Plaintiffs have admitted all of the factual assertions in Sears' L.R. 56.1 Statement.

terminated. In the event of a termination, Diamond's lenders were permitted to take deposited bank funds to satisfy Diamond's loan obligations. Sears was not a party to the forbearance agreement.

On January 31, 2000, Sears informed Diamond that it was exercising its right to terminate the Licensing Agreement, effective immediately. Under the terms of the forbearance agreement, Diamond's lenders were then permitted to immediately collect upon a portion of the outstanding loans by taking the funds in Diamond's bank account. Plaintiffs now admit, contrary to the allegations in their previous complaints, that Sears did not control Diamond's bank accounts, did not empty those accounts and neither took nor received money from those accounts on or after January 31, 2000.

Plaintiffs received their final paychecks issued by Diamond and drawn on Diamond's bank accounts on or around January 31, 2000, the same date that Diamond ceased operations. After Diamond ceased operations, Sears took over its business. All Diamond's phone numbers were transferred to Sears. Home improvement jobs that had been sold but not yet installed were completed by Sears. Sears received all the revenues from customers for these jobs. Sears paid Diamond's subcontracted installers the amounts Diamond had agreed but failed to pay for work performed, but did not pay commissions to the Diamond home consultants who had sold the jobs. Sears has not paid the Diamond employees who worked on those jobs.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter

of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Admissible evidence must be evaluated in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In Counts I (unjust enrichment), III (violation of the Illinois Wage Payment and Collection Act), and IV (breach of contract), plaintiffs seek to collect from Sears the wages that they claim to be due and owing from Diamond. This is not plaintiffs' first attempt to do so. In their original complaint, plaintiffs alleged that they were employed by an entity they termed "Sears/Diamond." Sears moved to dismiss, arguing that no such entity exists, and rather than respond, plaintiffs filed an amended complaint, eliminating any reference to "Sears/Diamond," but alleging that plaintiffs "were employed by Sears, or Sears and Diamond, and that they were subservants of Sears."

Sears again moved to dismiss. This time plaintiffs chose to resist the motion, arguing that they had adequately alleged that Diamond was a servant of Sears and that plaintiffs were subservants. This court held that although plaintiffs were correct that an allegation based on subserviency could state a claim for unjust enrichment, plaintiffs had failed to adequately allege a subservant relationship. Brown v. Sears Roebuck & Co., 2002 WL 3143395 at *2-3 (N.D. Ill. 2002). In particular, the court noted that a general allegation of subserviency was insufficient, even under the liberal notice pleadings rules, because the Licensing Agreement, which was part of the pleadings, specifically indicated an intent to create an independent contractor relationship with Diamond maintaining day-to-day control of its operations and employees. The complaint lacked any factual allegations that Sears actually exercised day-to-day control over Diamond, in contrast to the wording of that Licensing Agreement. Id. at *3-4. The court gave plaintiffs leave to try to plead around this problem if they could do so consistent with their obligations under Fed. R. Civ. P. 11. Id. at *6.

In their second amended complaint, plaintiffs now allege that they were "dual employees of both Sears and Diamond." Plaintiffs admit that the ability to withstand Sears' motion for summary judgment on their claims for unjust enrichment, violation of the Illinois Wage Payment Act, and breach of contract, depends on whether there are sufficient facts in the record to demonstrate that Sears actually exercised substantial daily control over plaintiffs' work.

As this court held in Brown, 2002 WL 3143395 at *3, Illinois has adopted the 10-factor test set forth in Restatement (Second) of Agency § 220 to determine whether an employer-employee relationship exists. Those factors are:

> (1) the extent of control over the servant; (2) whether the agent is engaged in a distinct business; (3) the locality's custom; (4) the skill required to perform the duty; (5) who supplies the instrumentalities and tools; (6) the length of time of the agency; (7) the method of payment; (8) whether the work is part of the principal's regular business; (9) the belief of the parties; and (10) whether the principal is in business.

The right to control the manner in which the work is done is the most important factor. Bob Neal Pontiac-Toyota, Inc. v. Industrial Commission, 433 N.E.2d 678, 680-81 (Ill. 1982).

To establish Sears' daily control over Diamond's employees, plaintiffs point to Sears' QED (Quality Every Day) Program, that was applied to Diamond through the Licensing Agreement. This program placed certain requirements on Diamond employees, including:

- When the initial call is made by a customer during normal business hours, the phone is answered within three rings every time by a courteous, knowledgeable person.

- A sales call is scheduled at the convenience of the customer for all leads in a positive and timely manner during the customer's initial call.

- The salesperson is on time (not early or late) for every sales call.

- The salespersons is always neat and appropriately dressed and has proper identification.

- For estimating the project price, complete, accurate measurements are made by the salesperson the first time, every time.

- Written warranties are shown and fully explained to every customer at point of sale.

- A copy of a detailed written estimate is fully explained and left with the customer.

- The length of in-home presentation is suitable for the customer.

- The project is scheduled to be installed when the customer wants it.

- The project is installed on the date and at the time the customer is promised.

- The customer is kept informed so that the customer never has to call about job progress.

- When a customer calls about service, the contact person will conduct himself/herself in a friendly and courteous manner and will respond with an agreed plan of action for resolution by the next business day.

These requirements were enforced through Sears' review of the customer surveys. It is undisputed, however, that if Sears' was dissatisfied with a particular employee, it could only request that the employee be transferred or fired. The actual authority to fire remained at all times with Diamond, and Diamond did not always comply with Sears' requests. Indeed, plaintiffs' own witnesses, R.Q. Whitmire and Michael Burfield both testified that all of Diamond's employees across the country reported to, where evaluated by, and had their compensation determined and paid by Diamond officials.

Moreover, the evidence demonstrates that Sears had no authority to direct the details of plaintiffs' daily work, outside of the general requirements set forth in the Licensing Agreement. To be sure, some employees used materials that were pre-approved by Sears, but the materials were

7

actually produced by Diamond. Additionally, although Sears' forms were used for payment by Sears credit card, payment could be made through Visa, Mastercard or American Express, in which case those companies' forms were used. In short, plaintiffs' evidence of control is merely evidence of enforcement of the terms of the Licensing Agreement. The crux of day-to-day control, however, is not the specificity or rigor with which a contract characterizes the conditions of its performance, but the existence of discretionary control. Hojancki v. Klein-Acosta, 285 F.3d 544, 551 (7th Cir. 2002). "[O]ne can control the conduct of another contracting party by setting out in detail his obligations; this is nothing more than freedom of contract. This sort of one-time control is significantly different than the discretionary control an employer daily exercises over its employees' conduct." Id. (quoting EEOC v. North Knox School Corp., 154 F.3d 744, 748 (7th Cir. 1998).

Thus, plaintiffs' evidence demonstrates only that Sears demanded compliance with the Licensing Agreement with specification and rigor. There is no evidence, however, that Sears exercised the type of discretionary control over individual Diamond employees, particularly the instant plaintiffs, the with same specification and rigor necessary to establish the employer/employee relationship. Absent that relationship, plaintiffs cannot prevail on their unjust enrichment, Illinois Wage Payment Act, and breach of contract claims. Accordingly, Sears' motion for summary judgment on Counts I, III and IV is granted.

Finally, with respect to Count II, plaintiffs' claim for conversion, plaintiffs have admitted that Sears did not remove any money from the Diamond bank accounts.[3] All money removed from those accounts was taken by Diamond's banks and lenders. Because Sears has never wrongfully assumed

---

[3]Plaintiffs have not responded to Sears' motion for summary judgment on this count, indicating that they agree summary judgment is appropriate.

control over the money in question, <u>Cirrincione v. Johnson</u>, 184 Ill. 2d 109, 114 (1998), plaintiffs cannot succeed on their claim for conversion. Accordingly, summary judgment is granted to Sears on Count II.

## CONCLUSION

For the reasons set forth above, Sears' motion for summary judgment on Counts I through IV is granted. This case is set for a report on status October 7, 2003, at 9:00 a.m.

**ENTER:** **September 24, 2003**

**Robert W. Gettleman**
**United States District Judge**